### J. K. HURLEY V. THE STATE.

No. 15516. Delivered February 22, 1933.
Reported in 57 S. W. (2d) 580.

The opinion states the case.

*Herman G. Nami* and *Frank B. Vaughan,* both of San Antonio, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for passing a forged instrument; punishment, two years in the penitentiary.

A note signed ostensibly by J. L. Farren was claimed to be a forgery, and appellant was convicted for passing same. Appellant while a witness admitted that he did pass said note to C, but claimed that when this was done he believed it to be genuine and that it had been signed by Farren. He said he did not know there was any question as to Farren having signed the note until this indictment was returned. He further said he received the note through the mail after having mailed to Farren a similar note for his signature. The defensive theories. raised by this testimony were submitted to the jury in a manner apparently acceptable to appellant.

Farren testified that the signature on said note was not his, and that the first he knew of the existence of said note was when notified by C that he owned said note and wanted it paid; that he had bought said note from this appellant. Farren further testified that. he at once came to San Antonio and saw both C and appellant, and that appellant told him "that was just a little crooked deal he had pulled and that he had already settled it, and I told him I didn't want some one to be holding a judgment against me that I didn't know about, and he said to forget it that he had everything fixed up." Expert witnesses for the state swore that the note in question did not bear the genuine signature of Farren. They made comparison between the signature of the note and a number of Farren's checks and notes with his genuine signature thereon.

Appellant has seventeen bills of exception, each of which has been examined and considered, but none of which we deem to call for any extended discussion. Bills 1, 2 and 5 relate to questions asked C by the state as to how much he paid appellant for the alleged forged note. The matters may have been of some materiality as supporting the proposition that appellant knew the note to be false and considered it of little value.

Bill of exception No. 3 sets out objections to the introduction of the alleged forged note, on the ground that it was payable to appellant's wife, and that an attempted transfer of same by appellant to C would be illegal. We doubt the correctness of considering the legality vel non of such transfer, but

call attention to the fact that a written transfer of the note to C by appellant and his wife was in evidence.

The matters set out in bill of exception No. 4 relate to rejected cross-examination of a state witness who testified as an expert as to the dissimilarity between the genuine signature of Farren and that upon the alleged forged note. The ground of objection seems to be that this witness claimed to know Farren's signature by reason of having been connected with the bank where Farren did business, and appellant asserted that testimony to the personal knowledge of Farren's signature by said witness would be inadmissible in this case because witness first acquired his knowledge of Farren's signature some time after the instant transaction. The matter seems of no materiality as affecting the testimony of the witness regarding the similarity of signatures.

The jury came back into the court room for further instruction after their retirement. Appellant claims that he was not present at the time they were instructed on this occasion. There was ample testimony, as set out in bill of exception 6, to support the court's conclusion that appellant was present. No such facts are set out in bill of exception 7 as lead us to believe that the court exceeded his discretion in the matters set out therein; it being complained that the voice and manner of the state's attorney was harsh in his examination of a defense witness, and that he was trying to browbeat the witness. We entertain the same view of the matters appearing in bill of exception No. 8.

Bills of exception 10 and 11 complain that the state's attorney said to the jury that a man who would forge or pass a forged instrument was a low down, common, stinking sneak. This was rather plain language, but expressive of the attitude of the state's attorney toward a crime which has been characterized as a stab at the very vitals of the safety and stability of our commercial credit. The argument may have been an effort to do what Sam Jones said ought always to be done, "Put your fodder on the ground so that everything from a giraffe to a hog can get at it." Since the verdict of the jury gave appellant the minimum penalty, the homespun language of the state's attorney evidently did not greatly excite the prejudice or passions of the jury.

Bills of exception 12, 13, 14 and 15 set out various complaints of the statement of the state's attorney to the jury that the state was electing to prosecute on that count of the indictment charging the passing of a forged instrument for certain reasons, etc. To set out each complaint of this statement would

lengthen our opinion without elucidating any legal proposition. Each of the bills is qualified. No exceptions were taken to the qualifications. As qualified none of the bills present error.

Bills of exception 16 and 17 complain of misconduct of the jury. The court states in his qualification to said bills that no testimony was offered upon the hearing of the motion for new trial supporting the contention made. The order of the court overruling the motion for new trial sets out that the court heard evidence. Same is not brought before us by any bill of exception or statement of facts.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*